UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JERMEAL WHITE,

    Plaintiff,

vs

WARDEN RON ERDOS, et al.,

    Defendants.

Case No. 1:20-cv-101

Black, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

This civil action is now before the court on Defendants' motion for summary judgment (Doc. 50) and the parties' responsive memoranda.  (Docs. 59, 60).

**I. Background and Facts**

Plaintiff Jermeal White is an inmate currently housed at the Southern Ohio Correctional Facility (SOCF) in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC").  On February 6, 2020, Plaintiff filed a Complaint against Defendants Warden Ron Erdos, Unit Manager Chief Cynthia Davis, and four John Doe Correction Officers. (Doc. 1).  Upon initial screening of the complaint, Court dismissed Warden Ron Erdos and permitted Plaintiff to proceed with his allegations against Defendant Davis and against the John Doe Correction Officers, all in their official capacities. (Doc. 11, PageID 113).

Plaintiff then filed an amended complaint on September 20, 2020.[1] (Doc. 25).  In the Second Amended Complaint, Plaintiff alleges that Correctional Officer "CO" Justin

---

[1] For purposes of this order, given Plaintiff's pro se status and the fact that Plaintiff refers back to the original complaint in the amended complaint, the Court has considered Docs. 1, 12 and 25, combined, as the operative pleading.

Deerfield told White that he was going to mess with him that day and that he lied when he alleged that White spit on him. (Doc. 25, PageID 189). He then alleges that Lt. William Bauer came to White's cell and sprayed him with Oleoresin Capsicum (aka "OC") for no reason. (Id). White alleges that COs Ryan Tabor and Joshua Kinner applied extreme force on him for no reason while he was being escorted and that they tried to break his hands. (Id., PageID 190). White also claims that they threw him up against a window along a wall causing his shoulder to be cut "real bad." (Id.). White requests declaratory judgment finding that the acts and omissions described in his complaint violate his constitutional rights. (Doc. 25, PageID190, Doc. 1, PageID 11). He also requests a preliminary and permanent injunction ordering his transfer to another prison. He seeks $1 million in compensatory damages against each defendant, jointly and severally. (Id.).

The evidence of record establishes the following undisputed facts:[2]

On December 30, 2019, Lt. Bauer and Lt. Fri were called to the J2 Block because Jermeal White was refusing to come out of his cell for a routine shakedown. (Doc. 48, citing Doc. 41, Lt. Bauer Decl, ECF No. 41, PageID 319). When Lt. Bauer and Lt. Fri arrived at J2, they learned that Plaintiff had spit on CO Deerfield. (Id., Doc. 41, Ex. 5, Use of Force Report, PageID 387, 395, 405, 413). CO Deerfield used a short burst of OC spray to quell Plaintiff's assaultive and recalcitrant behavior and to maintain order and security of the inmate and staff. (Doc. 47, Skidmore Declaration, PageID 457, ¶5). When Lt. Bauer and Lt. Fri arrived at the cell front, Lt. Bauer gave Plaintiff an order to turn around so that he could be handcuffed. As the outer door began to open, Plaintiff began spitting

---

[2] Defendants' proposed undisputed facts are well-supported and herein adopted. (Doc.48). As more fully explained below, Plaintiff's response to Defendants undisputed facts is not supported by any citations to contradicting evidence.

2

in Lt. Bauer's direction. (Doc. 41, Bauer Declaration, PageID 319, Fri Declaration, Doc. 47, PageID 459). 5. Lt. Bauer immediately reacted to White's action by deploying OC to his facial area. (Id., Doc. 47. Skidmore Declaration, PageID 458).  Plaintiff continued spitting out of his cell door. Lt. Bauer continued to deploy OC spray until Plaintiff complied with his orders. (Id.).

Plaintiff was treated by medical prior to leaving his cell. (Doc. 41, Use of Force Report, PageID 361, "Inmate White complied with all orders of the strip search and was checked by medical.").  He was then placed in restraints and removed from his cell. (Id., Doc. 47, Skidmore Declaration, PageID 458, Fri Declaration, PageID 460). Correctional Officers Tabor and Kinner were present to escort Plaintiff to the strip cage. CO's Tabor and Kinner used an escort technique in order to maintain control over inmate White. (Id., Doc. 41, Use of Force Report, , PageID 399, Declarations of Tabor and Kinner).

While being escorted to the J2 strip cage, Plaintiff was resisting by attempting to pull away from the escorting officers as they were coming up the stairs in J2 North. (Doc. 41, Tabor Declaration, Kinner Declaration, PageID 319-320).  Once Plaintiff was placed in the strip cage, and the strip search was completed, Plaintiff was removed from the cage and again was placed in an escorting technique by Officers Tabor and Kinner. (Id.)  While escorting Plaintiff through K-Corridor, Plaintiff leaned his weight forward and to the right of CO's Tabor and Kinner, causing them to momentarily lose balance, which caused White to bump up against a glass window in the corridor, breaking the glass and causing a cut to his right shoulder. (Doc. 41, Declarations of CO's Tabor, Kinner, and Lt. Fri., see also Use of Force Report, PageID 366-368).

Prior to Plaintiff's injury, while Lt. Fri and CO's Tabor and Kinner continued with their escort of Plaintiff to K2, Lt. Bauer went to the Captain's Office. While there, he was called over the radio to report to K-Corridor. When he arrived, Lt. Bauer observed Plaintiff on the floor bleeding. (Doc. 41, Bauer Declaration, PageID 320). Lt. Bauer called for a wheelchair and Plaintiff was assisted from the floor and placed in the wheelchair. (Id.)

Plaintiff then became irate, screaming and yelling at Lt. Bauer, stating, "I hate you bitches." Lt. Bauer ordered him to calm down so they could get him to medical for treatment. (Id.)  Plaintiff refused and began spitting in the direction of Lt. Bauer. Lt. Bauer deployed OC to Plaintiff's facial area to gain his compliance and prevent him from spitting on him and other staff. (Id., see Doc. 41, Declarations of CO's Tabor and Kinner). Plaintiff put his foot on the floor and was turning the wheelchair in an attempt to evade the OC spray. Lt. Bauer continued spraying OC to gain Plaintiff's compliance so that he would stop moving the wheelchair and quit spitting, and to protect the officers from exposure to Plaintiff's blood. (Id., see also Doc. 41, Use of Force Report, PageID 375). Once Plaintiff complied with Lt. Bauer's orders, he was escorted to medical for treatment. Once medical completed their assessment and decontaminated Plaintiff, he was sent to an outside hospital by ambulance to treat his injuries. (Doc. 41, Ex. 5, Use of Force Report, PageID 401).

Defendants William Bauer, Cynthia Davis, Justin Deerfield, Joshua Kinner, and Ryan Tabor now move for summary judgment.  (See Doc. 50). Defendants assert, *inter alia*, that they are entitled to judgment as a matter of law because Plaintiff has failed to establish any violation of his Eighth Amendment rights and Defendants are entitled to

qualified immunity. For the reasons detailed below, the undersigned finds Defendants' motion for summary judgment is well-taken.

### II. Analysis

#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id*. at 252.

#### B. Applicable Law

As detailed above, Plaintiff asserts that Corrections Officer Parish used excessive force against him in violation of his rights under the Eighth Amendment. The Eighth Amendment prohibition on cruel and unusual punishment protects prison inmates from the "unnecessary and wanton infliction of pain." *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). An Eighth Amendment excessive force claim has both a subjective and an objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). The subjective component focuses on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id.; see *also Hudson v. McMillian*, 503 U.S. 1, 6, 112 S. Ct. 995 (1992). In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the official; and the extent of the injury inflicted. *Hudson*, 503 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312, 320 (1986).

On the other hand, the objective component of an Eighth Amendment excessive force claim requires that a plaintiff's injury or pain be "sufficiently serious" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580; *Williams*, 631 F.3d at 383. As the Supreme Court of the United States has stated, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9-10; *Rafferty v. Trumbull Cty.,* 915 F.3d 1087, 1094 (6th Cir. 2019). Rather, the Eighth Amendment protects prisoners only from that conduct which is "repugnant to the conscience of mankind" and excludes "de minimis uses of physical force." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (quoting Hudson, 503 U.S. at 9-10). In addition, this

Court has recognized how the Sixth Circuit gives deference to prison officials using force in maintaining institutional discipline and security. *See, e.g., Anderson v. Lawless*, S.D. Ohio No. 2:17-cv-1057, 2017 U.S. Dist. LEXIS 209814, at *17 (Dec. 21, 2017) (citing *Combs*, 315 F.3d at 556-57). On occasion, the maintenance of prison security and discipline may require that inmates be subjected to physical contacts actionable as assault under the common law. *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). "Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Combs, 315 F.3d at 557.

  C. *Plaintiff failed to properly oppose Defendants' summary judgment motion*

Rule 56 (c) provides that the nonmovant must "cit[e] to particular parts of materials in the record" to demonstrate the existence of a genuine dispute of material fact, or otherwise "show[ ] that the materials cited" by the moving party do not demonstrate that no disputed issue of material fact exists. Fed.R.Civ.P. 56(c)(1). Thus, the non-moving party must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F.Supp.2d 846, 849 (S.D. Ohio 2011). He "cannot rest on the mere allegations of the pleadings." *Id*. See also *Id*. at 851-52 (holding that a pro se party cannot rely on allegations or denials in unsworn filings when opposing a motion for summary judgment).

7

Thus, to demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)(citation omitted).  It is the Plaintiff's burden to point out record evidence to support his claims.  "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

Here, Defendants note that Plaintiff's responsive pleading contains no new information, no citation to legal authority, no sworn affidavits or declarations to support his position, nor any additional evidence submitted to overcome Defendants' well-supported Motion for Summary Judgment. Plaintiff has not submitted verifiable evidence into the record to substantiate his claims of excessive force. The video recording that he relies on in support of his allegations, which Defendants submitted into the record, support the fact that excessive force was not used on White when faced with his assaultive behavior (spitting on Defendants Deerfield and Lt. Bauer and failure to obey direct orders).

In light of the foregoing, the undersigned agrees that Plaintiff has failed to properly oppose Defendants' Motion for Summary Judgment by failing to cite to the evidence in the record of the kind required by Rule 56(c) of the Federal Rules of Civil Procedure. As such, pursuant to Rule 56(e) if the Plaintiff fails to properly support an assertion of fact or fails to properly address Defendants asserted facts, the Court may consider the fact

8

undisputed for summary judgment purposes and grant summary judgment if Defendants' motion and supporting materials, including the facts considered undisputed show that Defendants are entitled to summary judgment. Accordingly, for the reasons that follow, the undersigned recommends that Defendants' well supported motion for summary judgment should granted.

D. *Defendants Skidmore, Deerfield, Bauer and Tabor are entitled to judgment as a matter of law with respect to Plaintiff's excessive force claims under the Eighth Amendment*

1. *OC Spray*

As detailed above, on December 30, 2019, COs Skidmore and Deerfield randomly picked Plaintiff's cell for a shakedown. When they asked White to cuff-up so he could be taken to the shower while they searched his cell, he became hostile and started cussing at them. Plaintiff shouted an expletive at CO Deerfield, who was standing in front of the cell door, and he then spit on CO Deerfield's facial area and torso. CO Deerfield reacted with a burst of OC spray to Plaintiff's facial area.

Because of Plaintiff's assaultive behavior and refusal to move from his cell, Lt. Bauer and Lt. Fri were called to the cell block. Plaintiff then refused Lt. Bauer's order to cuff-up and then he spit towards Lt. Bauer, who reacted with a burst of OC spray. Plaintiff finally complied. He was cuffed and leg ironed and removed from the cell. In response to Plaintiff's spitting, threatening and disobedient behavior, CO Deerfield and Lt. Bauer used the least amount of force to quell any further assaultive behavior, with a short burst of OC spray, which each conducted reasonably under the circumstances. This is supported by the video and by the Declarations of COs Lt. Bauer, CO Tabor, CO Kinner, CO Skidmore and Lt. Fri. (ECF Nos. 41-1, 41-6, 41-7, ECF Nos. 47-1, 47-2 and Video – 565-19), and

the Use of Force Report (ECF No. 41-5). In light of the foregoing, Defendants contend that their use of force was reasonable under the circumstances. The undersigned agrees.

As noted by Defendants, corrections officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 Fed. Appx. 723, 725 (6th Cir. 2004)). A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer v. Brennan*, 511 U.S. at 844-45. As such, the Sixth Circuit has found no Eighth Amendment violation in numerous cases involving "the use of ... chemical agents against recalcitrant prisoners." *Id*. (*quoting Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)); *Jennings*, 93 Fed. Appx. at 725 ("The videotape squarely demonstrates that Jennings disobeyed repeated direct orders prior to the use of pepper spray."). See also *Thompson v. Joseph*, No. 1:12-cv-992, 2014 WL 1685918, at *7 (S.D. Ohio Apr. 29, 2014) (Report and Recommendation) (Bowman, M.J.), adopted, 2014 WL 2172894 (S.D. Ohio May 23, 2014) (the defendant was entitled to qualified immunity because "no reasonable officer would have understood that it violated the Eighth Amendment to reactively aim chemical spray at Plaintiff in his cell for less than two seconds (based on the videotape record), in order to force a threatening inmate to retreat and restore order.").

Here, the evidence of record establishes that CO Deerfield used 10 grams of OC spray in reaction to White spitting on him and disobeying a direct order to cuff up. (Doc. 41, Use of Force Report, PageID 363). Lt. Bauer used a short burst of OC spray in

response to Plaintiff spitting towards him. (Id., PageID 364). After being sprayed by Lt. Bauer, Plaintiff then followed orders and allowed the officers to cuff him and transport him from his cell to the strip cage. This de minimis use of force had the intended effect of restoring order and discipline from White and was justified. CO Deerfield's and Lt. Bauer's actions were not excessive nor was the force used maliciously or sadistically.

2. *Shoulder injury*

Plaintiff next alleges that CO Kinner and CO Tabor used excessive force on him while escorting him to K2 by trying to break his hands and making it difficult for him to walk or move. (Doc. 59, PageID 534-535). He states that the force used was so extreme that CO's Kinner and Tabor slowly twisted and turned him toward a prison window and pushed him through the window resulting in him being seriously cut [in his upper right shoulder area]. (Id.). Plaintiff's contentions are unsupported by the record evidence.

As noted above, corrections officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 Fed. Appx. 723, 725 (6th Cir. 2004)). Here, the evidence establishes that while Plaintiff was being escorted to K corridor by CO Tabor and CO Kinner, he was resisting and pulling away from the officers Kinner and refusing orders to stop resisting. This resulted in Plaintiff's right shoulder being thrust up against a glass window, breaking the glass, causing his shoulder to be cut. Even then, Plaintiff continued to struggle, and the COs then placed him on the floor. (Doc. 41, Kinner and Tabor Declarations, Doc. 47, Fri Declaration). Based on the foregoing, the undersigned finds that the Defendant COs used reasonable force to gain control over Plaintiff, for the safety and security of those

11

involved, and of the prison. As such, Defendants' motion for summary judgment is well-taken in this regard.

  E. *Defendant Davis is entitled to judgment as a matter of law with respect to Plaintiff's failure to protect claim under the Eighth Amendment*

  In order to state an Eighth Amendment claim against Defendant Davis based on a failure to protect him from an attack, Plaintiff must allege facts showing that Defendant's conduct amounted to "deliberate indifference" to a known risk of harm to Plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); see also *Vaughan v. Ricketts*, 859 F.2d 736, 741 (9th Cir. 1988) (finding that a prison administrator's indifference to brutal behavior of guards towards inmates is sufficient to state an Eight Amendment claim), overruled on other grounds by *Koch v. Ricketts*, 68 F.3d 1191 (9th Cir. 1995). A prison official may be held liable for his failure to protect inmates from attacks only if the official knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

  Here, Plaintiff alleges he informed Defendant Davis that his safety was compromised by being housed at SOCF; that people were out to kill him; that Correction Officers attempted to kill him on December 30, 2019; and that he requested a transfer from SOCF based on these allegations, to no avail. (Doc. 1). In support of these claims, White alleges that he "kept expressing the fact to the prison that it's not safe on the units here for Plaintiff, but that unit manager Cynthia Davis doesn't address his concerns." (Id., PageID 7). Instead, he claims that Defendant Davis keeps placing Plaintiff in harm's way. (Id.). And that she placed Plaintiff on the K2-unit against "the obvious fact it is not responsible for me (sic) on this unit." (Id.). He claims that Defendant Davis' supervision is

inappropriate and that his allegations prove it. (Id.). Plaintiff also claims that a "real big C/O from a case before this court, and his partners, have been trying to kill Plaintiff, and told Plaintiff they are going to get him." (Id.).

Plaintiff claims his safety is in serious danger, and refers to an Informal Complaint Resolution that he filed with Warden Erdos on January 20, 2020 in support of this allegation. (Id., PageID #8, ¶1). He states in an "Amended Complaint" that Defendant Davis knowingly placed Plaintiff in harm's way by not addressing his documented "serious concerns as required by administrative prison rules." (Doc. 12, PageID 121, ¶1).

However, Plaintiff has failed to provide affidavits, declarations or evidence of any kind to support his claims against Defendant Davis, and thus fails to establish that there is a genuine dispute as to any material fact. The only records Plaintiff has provided to support his claims are his (unverified) complaints and grievance documents, which fail to establish a claim for deliberate indifference as to Plaintiff's safety. Furthermore, as set forth above, Plaintiff has failed to prove the underlying excessive force claim. Thus, his failure to protect claim must fail as well.

F. Qualified Immunity

Assuming Plaintiff has met his burden of establishing a violation of his Eighth Amendment rights, which he has not, Defendants are entitled to qualified immunity. The purpose of qualified immunity is to provide governmental officials with the ability "reasonably [to] anticipate when their conduct may give rise to liability for damages." Davis v. Scherer, 468 U.S. 183 (1984). Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would

13

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009). Once a defendant has raised the defense of qualified immunity, the plaintiff bears the burden of proof to show that the defendant is not entitled to that defense. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005).

Here, as detailed above, there is no evidence that Defendants used excessive force against Plaintiff or that Defendant Davis failed to protect Plaintiff. To the contrary, the evidence establishes that Defendants use of OC spray and Plaintiff's shoulder injury was caused by his own actions. As such, Plaintiff has failed to establish a violation of his constitutional rights. Accordingly, the undersigned finds that Defendants are immune from Plaintiff's claims against him.

### III. CONCLUSION

In light of the foregoing, **IT IS RECOMMENDED THAT;** Defendants' motion for summary judgment (Doc. 50) be **GRANTED;** and this matter be **TERMINATED** on the Court's docket.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| JERMEAL WHITE, | Case No. 1:20-cv-101 |
|     Plaintiff, | |
| vs | Black, J. |
| | Bowman, M.J. |
| WARDEN RON ERDOS, et al., | |
|     Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).